IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID W. DREWERY,                )
                                 )
    Plaintiff,                   )
                                 )
        vs.                      )  Civil Action No. 10-110
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
    Defendant.                   )

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

Pending before the Court are cross-motions for summary judgment filed by Plaintiff David W. Drewery and Defendant Michael J. Astrue, Commissioner of Social Security. Plaintiff seeks review of final decisions by the Commissioner denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* For the reasons discussed below, Defendant's motion is granted and Plaintiff's motion is denied.

II. **BACKGROUND**

    A.  Factual Background

Plaintiff David W. Drewery was born on August 11, 1962. After completing high school in 1981, he worked steadily at a variety of jobs. (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 6, "Tr.," at 211, 201-202.) In 1998, Mr. Drewery began working at the Westin

Convention Center in Pittsburgh, Pennsylvania, where his title was banquet floor supervisor. Among his work assignments was supervising a crew of workers who set up and took down tables and other fixtures for events held at the convention center. On April 24, 2004, Mr. Drewery was helping another worker move a cart of banquet tables weighing approximately 200 pounds. (Tr. 131.) He later reported that he heard something "pop" in his back, but continued working after a short rest, partly because he was afraid he would be "written up" if he did not complete his shift. (Id.)

He returned to work the next day, but eventually a physician ordered an MRI study which showed a herniated disc at L4-L5, and/or a lumbar strain; he was given vicodin for pain. He continued treatment with the physician engaged by the worker's compensation bureau and a back specialist. Mr. Drewery's employment was terminated in June 2005 when he was unable to continue working because of severe lower back pain. (Tr. 131-133.)

That same month, Plaintiff consulted Dr. Thomas Kramer, an orthopedic surgeon, complaining of ongoing pain in his right lower extremity and lower back, numbness and tingling down both legs, and difficulty rising from a seated position. (Tr. 133-135.) Dr. Kramer concluded that the earlier MRI study of the lumbar region, which showed midline and right posterior lateral disc herniation at L4-L5 with mild to moderate right neural canal and right neural foraminal encroachment, was consistent with the April 2004 injury

and the types of pain Mr. Drewery described. (Tr. 135.)

Mr. Drewery continued to see Dr. Kramer, but problems with his medical insurance coverage delayed some aspects of treatment. A second MRI showed severe right neural foraminal stenosis, that is, constriction or narrowing of the spinal canal secondary to either disc herniation or arthritis, at the L4-L5 level. Again, his reported pain was consistent with such a diagnosis according to his physician. In May 2006, Dr. Kramer recommended that Mr. Drewery undergo a lumbar laminectomy,[1] but cautioned him there was no guarantee that the pain would be relieved. He also believed Plaintiff was incapable of performing his pre-injury job at that time due to pain in his lower back and right leg, but could perform other types of work. (Tr. 187.) Again, insurance difficulties made it impossible for Mr. Drewery to have the necessary surgery. He continued to treat with Dr. Kramer through August 7, 2006, at which time Dr. Kramer again recommended a lumbar laminectomy, possibly including surgery on the S-1 vertebrae as well. (Tr. 141.) The surgery was never performed.

B. <u>Procedural Background</u>

In June 2006, Mr. Drewery filed applications for supplemental security income and disability insurance benefits, alleging disability as of April 24, 2004, the date of his injury at

---

[1] A laminectomy is the surgical removal of the posterior arch of a vertebra. See the medical dictionary on the National Institute of Medicine's website, Medline Plus, at www.nlm.nih.gov/medlineplus (last visited July 1, 2010), "MedlinePlus."

3

work, due to his spinal injury and diabetes. (Tr. 114-122.) The Social Security Administration denied his applications on September 29, 2006, reasoning that although he could not return to his previous heavy work, there were other jobs he could perform despite his physical limitations. (Tr. 78-79.)

Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 30, 2008, before Judge Alma S. DeLeon, in Pittsburgh, Pennsylvania. Mr. Drewery, who was represented by counsel, testified, as did an impartial vocational expert ("VE"), Samuel E. Edelmann, M.Ed. Judge DeLeon issued her decision on September 29, 2008, again denying benefits. (Tr. 21-27.) On November 19, 2009, the Social Security Appeals Council advised Mr. Drewery that it had chosen not to review the ALJ's decision, finding no reason under its rules to do so. (Tr. 1-4.) Therefore, the September 29, 2008 opinion became the final decision of the Commissioner for purposes of review. 42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), citing Sims v. Apfel, 530 U.S. 103, 107 (2000). On January 25, 2010, Plaintiff filed suit in this Court seeking judicial review of the ALJ's decision.

C. Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of

the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

### III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), *citing* Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential,

including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), citing Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

**IV. ANALYSIS**

A. The ALJ's Determination

In determining whether a claimant is eligible for supplemental security income, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe he is unable to pursue substantial gainful employment[2] currently existing in the national economy.[3] The impairment must be one which is expected to result in death or to have lasted or be expected to last not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(I); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000). To be

---

[2] According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities." "Gainful work activity" is the kind of work activity usually done for pay or profit.

[3] A claimant seeking supplemental security income benefits must also show that his income and financial resources are below a certain level. 42 U.S.C. § 1382(a).

6

granted a period of disability and receive disability insurance benefits, a claimant must also show that he contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). The Commissioner does not dispute that Mr. Drewery satisfied the first two non-medical requirements and the parties do not object to the ALJ's finding that Plaintiff's date last insured was December 31, 2009. (Tr. 23.)

To determine a claimant's rights to either SSI or DIB,[4] the ALJ conducts a formal five-step evaluation:

(1) if the claimant is working or doing substantial gainful activity, he cannot be considered disabled;

(2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits his ability to do basic work activity, he is not disabled;

(3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

(4) if the claimant retains sufficient residual functional capacity ("RFC")[5] to perform his past relevant work, he

---

[4] The same test is used to determine disability for purposes of receiving either DIB or SSI benefits. Burns v. Barnhart, 312 F.3d 113, 119, n.1 (3d Cir. 2002). Therefore, courts routinely consider case law developed under both programs.

[5] Briefly stated, residual functional capacity is the most a claimant can do despite his recognized limitations. Social Security Ruling 96-9p defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."

is not disabled; and

(5) if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, he is not disabled.

20 C.F.R. § 416.920(a)(4); see also Morales, 225 F.3d at 316.

In steps one, two, and four, the burden is on the claimant to present evidence to support his position that he is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy.[6] Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

Following the prescribed analysis, Judge DeLeon first concluded Mr. Drewery had not engaged in substantial gainful activity since April 24, 2004, the date on which he injured his back. (Tr. 23.) In resolving step two, the ALJ found that as of the date of the hearing, Plaintiff suffered from only two severe impairments, i.e., spinal stenosis and diabetes. (Id.)

At step three, the ALJ concluded none of Plaintiff's impairments, considered singly or in combination, satisfied the criteria of any relevant Listing. That is, Plaintiff testified that his diabetes was controlled and despite back pain, physical examinations revealed a negative straight leg raise, no

---

[6] Step three involves a conclusive presumption based on the listings, therefore, neither party bears the burden of proof at that stage. Sykes, 228 F.3d at 263, n.2, citing Bowen v. Yuckert, 482 U.S. 137, 146-147 n.5 (1987).

neurological defects, no tenderness, swelling or spasm, normal rotation and normal range of motion. (Tr. 23-24, *citing* Tr. 297-303, a physical RFC assessment performed September 26, 2006.)

At step four, the ALJ concluded Plaintiff retained the residual functional capacity

> to perform sedentary work (lifting and carrying no more than ten pounds), that affords a sit/stand option and does not require more than occasional bending, stooping, crouching, squatting, crawling, climbing, balancing or walking. Further, the claimant cannot be exposed to heights, moving machinery or temperature extremes and is limited in his ability to push or pull with his upper and lower extremities.

(Tr. 24.)

The ALJ further concluded that because Plaintiff was limited to sedentary work, he could not perform his past relevant work as a banquet floor supervisor, which the VE, Mr. Edelmann, described as semi-skilled, heavy work. (Tr. 24, 71.) However, based on Plaintiff's age, high school education, work experience, and residual functional capacity, as well as Mr. Edelmann's testimony, the ALJ concluded that jobs existed in significant numbers in the economy which Plaintiff could perform despite his limitations, for example, cashier, surveillance systems monitor, or telephone solicitor. (Tr. 25.) Thus, he had not been under a disability between April 24, 2004, and the date of the ALJ's decision and, consequently, was not entitled to benefits. (Tr. 26-27.)

B. <u>Plaintiff's Arguments</u>

Mr. Drewery raises three arguments in his brief in

support of the motion for summary judgment. (Doc. No. 13, "Plf.'s Brief.") First, the ALJ erroneously discounted Plaintiff's credible testimony concerning his chronic and severe lower back pain and the resulting functional limitations in his ability to sit, stand, or walk for extended periods of time. Second, the hypothetical questions Judge DeLeon addressed to the Vocational Expert failed to take into account his testimony concerning his symptoms and functional limitations. Third, the ALJ failed to address or discount the validity of the hypothetical posed by Plaintiff's counsel to the VE which did rely on Mr. Drewery's credible testimony. (Id. at 11.)

We address each of these arguments in turn. Our review omits any reference to functional limitations that might be associated with Plaintiff's diabetes or high blood pressure because (1) Mr. Drewery testified that these conditions were well under control (Tr. 53-54, 56), and (2) he does not argue that there are any limitations associated with those impairments.

C. Analysis

1. *The ALJ's rejection of Plaintiff's testimony regarding the extent of his back pain and the resulting functional limitations:* The Court finds itself somewhat at a disadvantage because although Plaintiff states in his brief that ALJ DeLeon "discounted the credible testimony of the Plaintiff concerning his chronic and severe low back pain and its resulting functional

limitations in his ability to sit, stand or walk for extended periods of time," this argument is never developed. That is, at no point in his brief does he identify portions of his testimony at the hearing which Judge DeLeon purportedly ignored. We consider the ALJ's decision and the transcript of the hearing to determine whether Plaintiff's argument is persuasive despite its brevity.

In the portion of her decision discussing Mr. Drewery's credibility, Judge DeLeon wrote:

> whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record.
>
> [Plaintiff's] allegations of debilitating pain and limitations are not supported by the objective evidence of record. Specially [he] testified that he cannot stand, get dressed, bend, lift, walk, sleep or carry anything secondary to constant lumbar pain.
>
> . . . .
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(Tr. 24.)

At the hearing, Mr. Drewery gave the following testimony which is relevant to the ALJ's credibility determination:

> He reported "pain constantly, day-in and day-out." (Tr. 53.)

11

He has back spasms "night and day" and "going up and down steps kills me. It hurts, hurts me out this world. Riding in a car, on a bus, I get so stiff. . .my back continues to hurt." (Tr. 55.)

The only medication he takes for pain[7] is over-the-counter Advil because he had become addicted to other pain medications and they were discontinued. (Tr. 56, 67-68.)

All types of indoor and outdoor housework cause such severe back pain that he cannot do any chores, nor can he carry anything as light as grocery bags. (Tr. 57-59.)

He can only stand or sit for "about four or five minutes" before he has to change position due to pain. (Tr. 60-61.)

He uses a cane which was prescribed by his doctor due to balance problems. (Tr. 62.)

His "constant ache" and "sharp, shooting pain" involves his lower back and his "whole right side." (Tr. 62.)

All movement triggers the pain and nothing relieves it. (Tr. 63.)

Physical therapy treatment for eight months at "Sports and Spine Rehab," back exercises, and pain management treatment did nothing to reduce his back pain. (Tr. 64-65.)

He sees his back doctor, Dr. Kramer, approximately every three to four months. (Tr. 64.)

Dr. Kramer told him his back condition was "going to be the same the rest of my life." (Tr. 65.)

Dr. Kramer also recommended surgery but told Mr. Drewery "it would not help me" and that there "wasn't going to be any change" in the pain. (Tr. 66.)

At the time of the hearing (July 30, 2008), he had been

---

[7] Plaintiff also takes metformin, a drug used with insulin to control type 2 diabetes. See drugs and supplements descriptions at Medline Plus.

treated "for the last six months" for carpal tunnel syndrome that caused an inability to pick up anything and "severe pain, top and bottom, in both wrists." (Tr. 68-69.)

Much of this testimony contradicts the medical evidence of record. For instance, contrary to Plaintiff's report that he had undertaken eight months of physical rehabilitation to attempt to improve his back condition, the record shows that although he began such therapy at the Spine & Sports Injury Rehabilitation Center on July 21, 2004, he missed 50% of the sessions between August 4 and September 13, 2004, and apparently did not return thereafter. His chiropractor found it "curious" that although Mr. Drewery reported he liked therapy and believed it was improving his condition, he did not attend sessions regularly. (Tr. 242-244.)

Similarly, on May 9, 2006, and again on August 7, 2006, Dr. Kramer recommended decompression of the spine from L4 to S1. Dr. Kramer reported having told Mr. Drewery that he recommended "observation only," but Plaintiff could have surgery "if he wishes." Dr. Kramer believed surgery would "hopefully help out his lower back and lower extremity pain," but he could "not give him any guarantee. He may want to go back to work [and] I told him that he will need to obtain an FCE[8] prior to doing so. Following up will be as needed as he will decide this on his own." (Tr. 268-269.) There was no evidence Plaintiff continued to see Dr. Kramer

---

[8] As the ALJ explained, an FCE is a Functional Capacity Evaluation. (Tr. 25.)

"every three or four months" after August 7, 2006, as he testified, even though his attorney was given the opportunity to supplement the record at the hearing. (Tr. 74-75.) In fact, the record shows that he consulted with Dr. Kramer only three times in the period between June 2005 and August 2006.

The likelihood that surgery would have improved Mr. Drewery's condition is also confirmed in notes from an appointment on May 25, 2006, at Allegheny General Hospital, where it was reported that Dr. Kramer had suggested that with surgery, there would be an "80% chance of improvement." (Tr. 287.)

Most significantly, there is nothing in Dr. Kramer's notes to support Plaintiff's claims that he is in constant excruciating pain to the point he cannot stand or sit comfortably for periods as short as four or five minutes; that he cannot carry any items or was ever told by a physician that he should not do so; that he had balance problems so severe that a cane was prescribed for his use; or that he ever undertook a course in pain management or was diagnosed with carpal tunnel syndrome. Surely, such severe pain symptoms and limitations would have been reported to his doctor and noted in the record as a matter of course.

It is well-established in this Circuit that a reviewing district court must, in most instances, give great deference to the ALJ's credibility determination because he or she is best equipped to judge the claimant's demeanor and attitude. *See* Reefer v.

Barnhart, 326 F.3d 376, 380 (3d Cir. 2003); Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975) (the ALJ has discretion to make credibility determinations and may reject claims of disabling pain "if he affirmatively addresses the claim in his decision, specifies the reasons for rejecting it, and has support for his conclusion in the record.") However, the Court must review the factual findings underlying the ALJ's credibility determination to ensure that it is "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation omitted.) Where the ALJ has stated reasons which are consistent with the record for his credibility determination, this Court will not disturb that determination unless it is "patently wrong." Schmidt v. Barnhart, 395 F.3d 737, 746-747 (7th Cir. 2005).

Here, Judge DeLeon specifically referred to evidence in the record to support her conclusions regarding Plaintiff's credibility, e.g., his failure to appear for physical therapy appointments; a physical examination slightly more than a year after his injury which showed no spasm or swelling, negative straight leg raising, and normal strength and sensation; the results of MRIs; and Dr. Kramer's statement on May 8, 2006, that Mr. Drewery's physical examination was "unremarkable" and that he could obtain a Functional Capacity Evaluation prior to returning to

work other than his heavy pre-injury occupation. (Tr. 25.)

Based on the above summary of the evidence and the ALJ's analysis, we are compelled to disagree with Plaintiff's argument that Judge DeLeon "failed to point to specific medical findings to support her finding concerning the credibility of the Plaintiff's testimony concerning the duration and intensity of his low back pain and its resulting functional limitations." (Plf.'s Brief at 9-10.) We conclude that her credibility evaluation satisfies the criteria necessary for affirmation by a reviewing court and will deny Plaintiff's motion for summary judgment on this issue.

2. *The ALJ's failure to incorporate in her hypothetical questions to the Vocational Expert all the limitations supported by Plaintiff's testimony*: At the hearing, the ALJ asked Mr. Edelmann the following hypothetical question:

> [A]ssume that I find the claimant is 45 years old and has a 12th grade education. Assume further that I find he can perform sedentary work, but it's further limited by the following. The first would be [that he is] able to lift and carry no more than ten pounds; the second to have a sit/stand option at his discretion; the third one to bend, stoop, crouch, squat, crawl, climb, balance and walk on occasions; the fourth one to push and pull, limited in his upper and lower extremities; the fifth one, to be exposed to heights; the sixth one to be exposed to moving machinery; and the seventh, to be exposed to temperature extremes. With those limitations, could this individual perform any other job in the national economy?

(Tr. 76.)[9]

---

[9] It appears there may have been a slight mis-transcription in this question because from the answer, it is clear Mr. Edelmann eliminated jobs which included being exposed to heights, moving

In response, Mr. Edelmann identified three sedentary jobs available in the national and local economies which such an individual could perform - cashier, surveillance system monitor, and telephone solicitor. (Tr. 76-77.)

Again, Plaintiff has failed to develop his argument on this point, stating only that the hypothetical question "was flawed in that it failed to include an adequate presentation of the Plaintiff's low back symptoms and the resulting functional limitations his low back pain produced in terms of his ability to sit[,] stand or walk for extended periods of time." (Plf.'s Brief at 10.) He further states that the hypothetical question "failed to address or consider [his] credible testimony concerning his . . . chronic and severe low back pain and its resulting functional limitations." (Id. at 11.)

"Under well-established Third Circuit law, hypothetical questions posed to a vocational expert must 'fairly set forth every credible limitation established by the physical evidence.'" Dunsmore v. Astrue, CA No. 08-1277, 2009 U.S. Dist. LEXIS 34952, *33 (W.D. Pa. Apr. 23, 2009), quoting Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999); see also Ramirez v. Barnhart, 372 F.3d 546, 552-555 (3d Cir. 2004) (a proper hypothetical question includes all of the limitations credibly established in the

---

machinery, and temperature extremes. Such exclusions are also consistent with the ALJ's written description of Plaintiff's RFC. (See Tr. 24.)

17

record.)   As the Court of Appeals has explicitly stated,

> we do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant. Instead, . . .the hypotheticals posed must accurately portray the claimant's impairments and. . .the expert must be given an opportunity to evaluate those impairments as contained in the record. . . .Fairly understood, such references to *all* impairments encompass only those that are medically established. . . .And that in turn means that the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*.

Rutherford, 399 F.3d at 554 (internal quotations and citations omitted; emphasis in original.)

As noted in the previous section, the ALJ did not err in her credibility determination. Consequently, her hypothetical question was not required to incorporate impairments Mr. Drewery alleged but for which there was no medical evidence. We will therefore deny Plaintiff's summary judgment motion based on his argument that the hypothetical question was inadequate or improper.

   3.  *The ALJ's failure to address the validity of the hypothetical questions posed by Plaintiff's counsel to the VE:* At the hearing, Plaintiff's counsel posed the following hypothetical question to the Vocational Expert:

> If you were to assume that this gentleman is 45 years old, with a 12th grade education; and he is unable to sit for longer than four or five minutes at a time; he's unable to stand for longer than four or five minutes; he's unable to lift anything on the advice of his doctor; and has balance issues requiring a cane. He's unable to bend over to tie his shoes and he needs assistance with everyday activities of bathing and dressing. Would there be any jobs in the economy for him?

(Tr. 73-74.)

Mr. Edelmann responded, "No. With those findings there would be no jobs he could perform." (Tr. 74.)

Mr. Drewery argues that "Judge DeLeon did not address nor discount the validity of the hypothetical offered by Plaintiff's counsel to the vocational expert nor the opinion offered by the vocational expert to the same." (Plf.'s Brief at 10.)

As noted in the previous section, a proper hypothetical question incorporates all of a claimant's limitations which are supported by medical evidence of record. There is no medical evidence to support several components of the question posed by Mr. Drewery's counsel, such as his inability to sit or stand "for longer than four or five minutes at a time," his inability to "lift anything on the advice of his doctor," or balance issues so severe as to require use of a cane. Therefore, the hypothetical question posed by Plaintiff's counsel was flawed and Mr. Edelmann's response cannot provide substantial evidence of disability. Just as a vocational expert's answer to an inaccurate question from the ALJ, for example, one which fails to incorporate all of a claimant's limitations, cannot be considered substantial evidence, neither can the answer to a question which includes limitations not supported by the medical record. See Dismuke v. Comm'r of Soc. Sec., No. 08-1342, 2009 U.S. App. LEXIS 2536, * 11-*12 (3d Cir. Feb. 5, 2009) (where the hypothetical question included impairments which were not supported by the medical record, the ALJ did not err in

declining to rely on the VE's responses thereto.)

We agree with Plaintiff that the ALJ did not address the alternate hypothetical question posed by his counsel at the hearing, but we do not find this omission sufficient basis for remand. See Rutherford, 399 F.3d at 553 (remand is unnecessary if correction of an error would not affect the outcome of the case.)

Having concluded that none of Plaintiff's arguments provides a reason for this Court to reverse the ALJ's decision denying benefits or to remand for further consideration, Plaintiff's motion for summary judgment is denied and Defendant's motion is granted. An appropriate order follows.

July 8, 2010

William L. Standish
United States District Judge